**David YARNALL, Appellant,**

v.

**R. Christopher ALMY and Hugh Kenworthy, Appellees.**

Superior Court of Pennsylvania.

Argued Oct. 30, 1997.
Filed Dec. 5, 1997.

Gerald F. McCormick, Wayne, for appellant.

James C. Sargent, Jr., West Chester, for Almy, appellee.

Before CAVANAUGH, SCHILLER and MONTEMURO*, JJ.

MONTEMURO, Judge:

Appellant, David Yarnell, who entered into negotiations for the purchase of Appellee–Almy's land, appeals from a final decree denying his request for specific performance or damages arising from the sale of this land to right of first refusal option holder, Appellee–Kenworthy. For the reasons set forth below, we affirm.

▮ Initially we note that our review of a final equity decree is very narrow; the findings of an equity court will not be disturbed absent an abuse of discretion, capricious disbelief of evidence, or lack of evidentiary support on the record for the findings. *Masloff v. Port Authority of Allegheny County*, 531 Pa. 416, 421, 613 A.2d 1186, 1188 (1992). Absent an abuse or error, we are bound to accept the findings of the chancellor in a court of equity, particularly where such findings are largely dependent upon the credibility of witnesses. *Werner v. Werner*,

393 Pa.Super. 125, 128, 573 A.2d 1119, 1121, *allocatur denied*, 527 Pa. 668, 593 A.2d 843 (1991). This is because the demeanor and credibility of witnesses, as well as conflicts in the evidence presented, are issues solely determined by the trier of fact and, therefore, beyond the scope of review of appellate courts. *Denes v. Pennsylvania Turnpike Comm'n*, 547 Pa. 152, 156, 689 A.2d 219, 222 (1997).

During trial, the parties submitted a stipulation of facts which, along with other evidence offered at trial, the trial court incorporated into its adjudication and decree *nisi*. With the standard in mind, we now review the findings of fact of the instant case, as taken from the court's adjudication and the parties' stipulation of facts.

The underlying action concerns the sale of 28 acres of land (the "Almy parcel") owned by Appellee–Almy in Chester County, Pennsylvania. Almy resides in Maine where he is the District Attorney of Penobscot County, Maine. Appellant, Yarnell, is a licensed real estate agent affiliated with the offices of Anstey & Associates in West Chester, Pennsylvania. Jim Miller, another licensed real estate agent with Anstey & Associates, received a telephone call in August 1993 from Almy's attorney advising him that Almy was interested in selling some or all of the Almy parcel and was seeking the assistance of an agent in marketing this land.

Miller spoke with Almy several times in August 1993 regarding the sale of this parcel, and, during one of their conversations, Almy informed Miller that the land was subject to a right of first refusal option held by Appellee–Kenworthy. During the same month, Miller notified Appellant regarding the Almy parcel, and the two visited the property. It was stipulated that no later than October 1993, Appellant knew that the Almy parcel was subject to this right of first refusal. Although Appellant may have been led to believe that the right of first refusal was oral, he later became aware that it was in writing, albeit unrecorded.[1] In a letter to Miller,

---

* Retired Justice assigned to the Superior Court.

1. "[Appellant's] original letter of intent indicated that he would do a 'title study'. An examination of the title of the property would not have revealed the right of first refusal here in question but would have indicated the existence of such

Appellant stated that he was investigating the property for its suitability as a real estate development; this letter was faxed to Almy on August 18, 1993. After many drafts, on January 18, 1994, Miller prepared a final version of a letter of intent, signed by Appellant, and faxed to and signed by Almy the next day. Copies of this letter of intent were sent to Kenworthy.

On January 31, 1994, Miller prepared a proposed agreement for the sale of the Almy parcel. This agreement was signed by Appellant, who attached a sewer addendum, and Miller then forwarded it to Almy. In the period between January 31 and February 3, 1994, Almy contacted Miller, specifically rejecting the sewer endorsement, and noting several other provisions of the proposed agreement which he wanted to change. Miller reviewed the proposed changes with Appellant, who indicated he would agree to them, and later told Almy to make the changes on the face of the proposed agreement, initial the changes, and send it back to him for preparation of a clean copy and delivery to Appellant for his signature.

On February 7, 1994, Miller called Almy and notified him that he had not yet received the proposal of January 31, 1994 with Almy's modifications. It was discovered that Almy sent the papers to Miller's old address, therefore, Miller asked Almy to fax to him a copy of the proposal with the changes on it. Pursuant to this request, Almy faxed a copy of the proposal to Miller on February 7, 1994, adding a note at the bottom of the first page of the proposal which read: "This Agreement of Sale is subject to a right of first refusal to Hugh Kenworthy, a copy of which is being faxed herewith." The next day, Almy, during a conference call with his attorney and Miller, expressly instructed Miller that he was revoking the January 31, 1994 agreement of sale that had been mailed, and instructed Miller to prepare a clean copy of the faxed proposal with all of Almy's changes. Almy directed Miller that, pursuant to the terms and conditions of the right of first refusal, a clean copy of the faxed proposal should be prepared for signatures and served on Kenworthy, and the version of the proposal which was lost in the mail was *not* to be delivered to Appellant.

Subsequently, on February 8, 1994, Miller faxed to Almy a copy of the "clean" version of the January 31, 1994 proposal, which contained all of Almy's modifications, and was signed by Appellant. On February 9, 1994, another conference call took place between Almy, his attorney, and Miller, after which *another* version of the proposed agreement of sale was prepared, this time with a lower purchase price but a higher up-front cash payment. This new offer was signed by Appellant, faxed to Almy, and forwarded to Kenworthy. By letter dated February 18, 1994, Kenworthy notified Almy of his intent to exercise his right of first refusal and purchase the Almy parcel on the same terms as contained in Appellant's offer of February 9, 1994. Thereafter, on April 8, 1994, Almy and Kenworthy entered into an agreement of sale for the purchase of the Almy parcel.

Based upon Kenworthy's assertion of his rights, Almy refused to perform pursuant to his agreement with Appellant. As a result, Appellant brought the underlying action in equity, seeking to compel performance or, in the alternative, obtain damages based upon the validity of his agreement of sale with Almy. On August 15, 1996, following a bench trial, the court entered an adjudication and decree *nisi* which, upon timely consummation of the agreement of sale between Almy and Kenworthy, terminated the rights of Appellant in the Almy parcel. The decree further denied damages to Appellant, the determination of which was without prejudice to Appellant's right to bring an action for damages or specific performance if the sale of the Almy parcel to Kenworthy was not completed by March 1, 1998. Thereafter, post-trial motions were denied, judgment was entered, and Appellant filed this timely appeal.

Despite the fact that, after many negotiations, Appellant entered into an agreement with Almy on February 9, 1994 which was subject to Kenworthy's right of first refusal,

---

other various rights and agreements as to put a reasonably prudent purchaser on notice of and require investigation into the existence of other, unrecorded, agreements affecting title to the property." (Adjudication and Decree Nisi, 8/15/96 at 2 n. 1).

he now seeks to enforce the prior January 31, 1994 proposal which was lost in the mail. This is because Appellant later discovered that the proposal which Almy initially mailed to Miller, despite its many modifications and the fact that Appellant was already aware of Kenworthy's rights, did *not* contain language indicating Kenworthy's right of first refusal. Rather, when it was discovered that the first proposal did not reach Miller, Almy then faxed a copy of the document to him and, at that point, added the notation regarding Kenworthy's right of first refusal. Essentially, "[n]ow that the terms [of the February 9, 1994 agreement] have not worked out to [Appellant's] satisfaction, he wishes to have this court find that his agreement should not be given effect but, rather, that we should give effect to an agreement which [Appellant] never signed and which was never delivered to [Appellant] or to anyone on behalf of [Appellant]." (Trial Ct. Op. at 3–4). This we will not do.

Appellant contends that the earlier January 31, 1994 proposal constitutes a binding agreement because, although Almy made changes to the proposal, Miller informed Appellant of these changes and Appellant assented to them, and Almy initialed the changes and mailed a signed agreement to Miller. Appellant seeks enforcement of this proposal despite: (1) the proposal was never mailed to him, but rather, to Miller, who is an agent of Almy; and (2) before the proposal ever reached Miller, Almy instructed him *not* to deliver it to Appellant but, instead, to prepare a different agreement. Indeed, in the days that followed, Appellant and Almy made many more changes to the proposal, and finally entered into an agreement on February 9, 1994 and submitted it to Kenworthy.

The bulk of Appellant's argument is supported by various case authorities concerning the Statute of Frauds,[2] key among which is a decision holding that a document signed by the party to be charged, but not legally delivered, can be used to satisfy the Statute

of Frauds. *See* Appellant's Brief at 12 (citing *Long v. Brown*, 399 Pa.Super. 312, 582 A.2d 359 (1990)). Therefore, Appellant essentially contends that because this initial January 31, 1994 proposal satisfied the Statute of Frauds, it is an enforceable agreement. This position, however, clearly fails to consider the established law of this Commonwealth.

While it is true that a document which is signed but not legally delivered can be used to satisfy the Statute of Frauds, "[t]he mere removal of the Statute does not necessarily compel a finding that a contract was entered into, or that an agreement reached is absolutely valid. These issues rely upon other areas of contract law." *Long v. Brown*, 399 Pa.Super. 312, 320, 582 A.2d 359, 363 (1990). The court in the instant case concluded that the January 31, 1994 document which did not make reference to Kenworthy's right of first refusal never became a contract between Appellant and Almy. Rather, the court found that no agreement ever came into being until February 9, 1994, when Appellant entered into a different, binding agreement with Almy which not only varied the financing terms of the potential purchase, but clearly evidenced Kenworthy's valid right of first refusal; Almy's obligations to Appellant were, therefore, contingent upon Kenworthy's waiving or failing to exercise his rights. Moreover, the court concluded that even if the initial January 31, 1994 proposal, which did not contain language indicating Kenworthy's right of first refusal, was a binding agreement, Appellant, by his own admission, knew of this right,[3] and, therefore, was aware that "that contract would have been trumped by Kenworthy's rights." (Adjudication and Decree Nisi, 8/15/96 at 7). We agree.

In order to form a contract, there must be an offer, acceptance, and consideration or mutual meeting of the minds. *Jenkins v. County of Schuylkill*, 441 Pa.Super. 642, 648, 658 A.2d 380, 383, *allocatur denied*,

---

**2.** 33 P.S. § 1.

**3.** The court further stated that although Appellant contends that he did not know the exact terms and conditions of Kenworthy's right of

first refusal, it is, indeed, Appellant's obligation to have determined those terms and conditions before agreeing to be bound by them. (Trial Ct. Op. at 4).

542 Pa. 647, 666 A.2d 1056 (1995). An alleged acceptance of an offer is not unconditional and, therefore, is not an "acceptance" if it materially alters the terms of the offer. *Thomas A. Armbruster, Inc. v. Barron,* 341 Pa.Super. 409, 419, 491 A.2d 882, 887 (1985) (citing 1 A. Corbin, *Corbin on Contracts* § 82 (1963)). As such, a reply which purports to accept an offer, but instead changes the terms of the offer, is not an acceptance, but, rather, is a counter-offer, which has the effect of terminating the original offer. *First Home Sav. Bank, FSB v. Nernberg,* 436 Pa.Super. 377, 389, 648 A.2d 9, 15 (1994), *allocatur denied,* 540 Pa. 620, 657 A.2d 491 (1995). Further, it is well established that the acceptance of any offer or counter-offer must be "unconditional and absolute." *O'Brien v. Nationwide Mut. Ins. Co.,* 455 Pa.Super. 568, 577, 689 A.2d 254, 258 (1997).

■ In the instant case, although Miller forwarded Appellant's proposed agreement or offer to Almy, Almy rejected portions of that offer and substantially changed many of its terms, thereby creating a counter-offer. However, there is no evidence of an "unconditional and absolute" acceptance of this new and modified agreement by Appellant. Indeed, although Almy initialed the changes he made and signed the agreement, he forwarded it to his *agent,* Miller, who was to make a clean copy and then deliver it to Appellant for his signature. While it is true that Miller discussed Almy's changes with Appellant, who stated that he would accept them, clearly this exchange falls short of evidencing an absolute acceptance or effective "meeting of the minds"; indeed, Appellant never, at any time, spoke directly with Almy, and there is no evidence to indicate whether Miller discussed all of Almy's modifications with Appellant.

Further, it is undisputed that before Miller ever received the mailed copy of the modified January 31 proposal, Almy directed him not to forward that proposal to Appellant and, instead, faxed Miller a copy of the proposal which included further modification in the form of the language referencing Kenworthy's right of first refusal. Pursuant to Almy's instructions, Miller prepared a clean copy of the faxed proposal, which referenced Kenworthy's right of first refusal, and *Appellant signed it* on February 8, 1994.

This proposal was changed *again,* however, and on February 9, 1994, Appellant signed this different, final version of the agreement which was then submitted to Kenworthy pursuant to the conditions of his right of first refusal. We will not allow Appellant, a licensed real estate agent, to enforce a prior agreement, when he has since accepted the terms of two *subsequent* proposals, simply because he is dissatisfied with the result. Appellant now seeks any avenue of redress merely because he is unhappy that the terms of the final agreement were accepted by Kenworthy, and, therefore, his rights in the Almy parcel were terminated. However, we agree with the observations of the trial court that:

> [t]rue, [Appellant] had put considerable time and effort and, perhaps, monies into investigation of the property without having any firm agreement for the purchase and sale thereof, but he did so knowingly, having no obligation himself with respect to the property, if for any reason he decided he did not wish to go forward with its purchase, but, as a result, having no rights in the property either.

(Trial Ct. Op. at 3).

Moreover, we find it necessary to note that the trial court, as the sole determiner of credibility found that:

> [Appellant's] case depends, in large measure, upon his own testimony which we found to be insufficiently credible to support any factual finding. Although [Appellant] probably testified accurately at some points during the trial, we found that he had no hesitancy in being evasive and less than candid when forthright and truthful testimony would apparently not have served his own purpose.... Having found that [Appellant] was not candid, truthful and forthcoming with respect to several material facts, we declined to credit any of his testimony as, under the circumstances, it is our right to do.

(Trial Ct. Op. at 2).

Therefore, based upon a review of parties' briefs, the applicable caselaw, and the find-

ings of the equity court, we find no abuse of discretion or error of law in its final decree and its decision to deny Appellant's request for specific performance or damages.

Affirmed.