

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-6-2004

# Feldman v. Comm College Alghny

Precedential or Non-Precedential: Non-Precedential

Docket No. 00-3355

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Feldman v. Comm College Alghny" (2004). *2004 Decisions.* Paper 1116.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1116

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 00-3355
_____

LEE FELDMAN,

Appellant

v.

COMMUNITY COLLEGE OF ALLGHENEY (CCAC), a public
and municipal entity and its agents;
DR. JOHN M. KINGSMORE, President;
DR. J. DAVID GRIFFIN, Executive Dean;
JOE DVORAK, Director of Computer Services;
DAWN GALLIMORE, Computer Lab Instructor;
ALLIED SECURITY, and its agents;
LT. WILLIAMS, SECURITY GUARD, AND A SECOND
UNKNOWN SECURITY GUARD;
CITY OF PITTSBURGH, A Public and Municipal Entity;
SAVELLI, Police Officer; HART, POLICE OFFICER ,
AND A THIRD UNKNOWN BLOND OFFICER, INDIVIDUALLY AND
IN THEIR CAPACITIES AS POLICE OFFICERS OF THE CITY OF
PITTSBURGH; LAMONT RICHARD


_____


On Appeal from the United States District Court
for the Western District of Pennsylvania

District Court Judge: The Honorable Donald J. Lee
(D.C. No. 97-cv-1251)
_____

1

Argued on October 23, 2003

Before: ALITO, FUENTES and BECKER, Circuit Judges.

(Opinion Filed: January 6, 2004)

_____

OPINION OF THE COURT

_____

Jerold S. Solovy
Barry Sullivan
Timothy A. Hudson (argued)
Jenner & Block, LLC
One IBM Plaza
Chicago, Illinois 60611

*Attorneys for Appellant*
*Lee Feldman*

Patrick L. Mechas
Carol L. Hesz (argued)
Sherry L. Halfhill
Burns, White & Hickton, LLC
120 Fifth Avenue, Suite 2400
Pittsburgh, PA 15222-3001

*Attorneys for Appellees*
*Community College of*
*Allegheny County, John*
*Kingsmore, J. David*
*Griffin, Joe Dvorak and*
*Dawn Gallimore*

A. Bryan Campbell (argued)
220 Grant Street
Sixth Floor
Pittsburgh, PA 15219

2

*Attorney for Appellees
Police Officers Savelli and
Hart*

Susan E. Malie (argued)
Jacqueline R. Morrow
City of Pittsburgh Department of
Law
313 City-County Building
Pittsburgh, PA 15219

*Attorneys for Appellee the
City of Pittsburgh*

Bruce P. Merenstein
Schnader Harrison Segal & Lewis
LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103

*Attorney for Intervenor
Micron Electronics, Inc.*

FUENTES, Circuit Judge:

Appellant, Lee Feldman, appeals the decision of the United States District Court for the Western District of Pennsylvania granting summary judgment in favor of defendants-appellees on three of Feldman's claims and dismissing one other. We exercised <u>de novo</u> review over each of these claims on appeal and affirm the District Court's decision. We also affirm the District Court's decision granting the motion of intervenor-appellee, Micron Electronics, Inc., to quash Feldman's subpoena. We

reviewed this order under an abuse of discretion standard.

**I.**

Because we write only for the parties, we will not detail the extensive factual and procedural background of this case. Appellant, Feldman, a continuing education student at Community College of Allegheny County ("the College"), had an on-going dispute (for approximately 8 months) with Dawn Gallimore, the computer lab instructor, over his contractual right to use the College's computer lab facilities. This dispute culminated in his forcible removal from the computer lab by Pittsburgh police officers and his arrest for trespass (charges that were ultimately withdrawn). Feldman filed suit raising several constitutional and state-law claims against the College, its president, its dean, the director of computer services, and Dawn Gallimore (collectively "the College defendants"). Feldman also filed suit against the City of Pittsburgh and two Pittsburgh police officers.

**II.**

At trial, Feldman claimed that the College defendants violated his First Amendment rights by subjecting him to arrest in retaliation for his statements to the College's president in which he alleged racial and religious discrimination by Gallimore (an African American woman) against him (a Caucasian Jewish man) in restricting his use of the computer lab. On appeal, Feldman argues that the District Court incorrectly applied the "public employer-employee discipline" model (instead of the "public school-student relationship" model) when analyzing this First Amendment retaliation claim. <u>See</u>

4

Azzaro v. County of Allegheny, 110 F.3d 968, 975 (3d Cir. 1997) (public employer-employee case setting out three-part test).

Under Azzaro, the first step is to determine whether Feldman's statements were protected by the First Amendment; second, whether the statements were a "motivating factor" in Feldman being denied computer lab use and arrested; and third, whether Feldman would have been denied access and arrested for reasons other than his statements. Azzaro, 110 F.3d at 975. This Court has applied a substantially similar test in cases involving retaliation claims brought by a non-employee against a government entity. For example, Estate of Smith v. Marasco involved a citizen's claim of retaliation by state police officers after he lodged complaints against the officers. 318 F.3d 497, 512 (3d Cir. 2003). In Marasco, we applied a three-part test, examining first, whether the plaintiff "engaged in protected activity;" second, whether "the government responded with retaliation;" and third, whether "the protected activity was the cause of the retaliation." Id. Marasco illustrates this Court's use of a test almost identical to the Azzaro standard in a non-employment situation such as Feldman's. Further, this standard is clearly more appropriate than the public school-student model used in Tinker v. Des Moines Independent Community School District, a factually dissimilar case that Feldman cites as precedent. 393 U.S. 503, 510 (1969) (involving a challenge by high school students to a prior restraint on expressive conduct to protest the Vietnam War).

Applying the first prong of the Azzaro test, the District Court correctly held that

Feldman's speech was not protected under the First Amendment since it did not involve a "matter of public concern," which is "determined by the content, forum and context of the given statement as revealed by the whole record." Id. at 976, quoting Connick v. Myers, 461 U.S. 138, 147-48 (1983) (internal quotations omitted). While Feldman attempts to argue that his claims of racial and religious animus create a matter of public concern, the record clearly shows that Feldman's conflict with Gallimore was merely a private dispute arising from a disagreement over the College's computer lab policies. The record further shows that the College defendants restricted Feldman's lab use for the sole reason that he was not currently registered in a class in progress. We agree with the District Court's conclusion that "there is absolutely nothing on the record that might support this rampant speculation about purported discriminatory motives of Dawn Gallimore or the other [College defendants]." Dist. Ct. Op. at 10. Thus, the first prong of the Azzaro test was not satisfied.

Nor did Feldman satisfy the second and third elements, which concern causation. The District Court addressed these elements, and we agree with its conclusion that there was nothing in the record to reasonably support an inference that the College defendants retaliated against Feldman because he exercised his First Amendment rights. Dist. Ct. Op. at 10. In fact, the College communicated its decision to bar Feldman from the lab for his violation of lab policies before Feldman wrote his letter referencing Gallimore's race. College defendants Brief at 27-28. We note that even if the first element of the Azzaro

6

test does not apply in this context, a question that we do not decide, Feldman's First Amendment claim would still fail for lack of evidence of causation. We, therefore, affirm the District Court's grant of summary judgment in favor of the College defendants on Feldman's First Amendment claim.

## III.

Feldman claims that the District Court erred in granting summary judgment for the City of Pittsburgh and two Pittsburgh police officers on his § 1983 false arrest, false imprisonment, and malicious prosecution claims. We agree with the District Court's conclusion, however, that Feldman does not establish the existence of any genuine issue of material fact as to whether the officers had probable cause to arrest him for defiant trespass.

Probable cause exists "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995). The record shows that a College security guard informed the officers that he had instructed Feldman to leave and that Feldman had refused to do so. App. at 221-22. This information was sufficient for the officers to reasonably believe that Feldman was engaging in "defiant trespass" on College property, as defined by 18 Pa.C.S. § 3503(b).

Feldman's assertion that the officers should have investigated his status as a

7

student and his claim that he had a right to use the lab is incorrect. Under <u>Merkle v. Upper Dublin School District</u>, an officer is not required to "undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already exists." 211 F.3d 782, 790 n.8 (E.D. Pa. 1999) (stating that an arresting officer was reasonable in believing a credible report from a school principal who witnessed an alleged theft of school property by a teacher).

We agree with the District Court that, regardless of the ultimate disposition of the criminal charges, there was clearly probable cause under all of the circumstances for the officers to believe that Feldman was trespassing. "[T]here is no question that the police officers were not required or permitted to conduct a trial of the matter on the spot to determine whose interpretation of [the College's] policies was correct, and that there was ample probable cause to arrest this defiant trespasser who refused to obey repeated requests by the owner's agents to leave." Dist. Ct. Op. at 18-19. We, therefore, agree with the District Court's grant of summary judgment in favor of the officers and the City of Pittsburgh on this issue.

## IV.

We also agree with the District Court's grant of summary judgment in favor of the officers and the City of Pittsburgh on Feldman's Fourth Amendment excessive force claim. The District Court held that the force exerted by the police "was no more than was necessary to effectuate the arrest, given [Feldman's] stubborn and unreasonable refusal to

8

comply with the security officer's and police officers' repeated requests to leave the computer lab." Dist. Ct. Op. at 23. Viewing the facts as Feldman relates them, Feldman fails to present any genuine issue of material fact to support an excessive force claim.

An excessive force claim requires proof that the officers' conduct was objectively unreasonable, considering several factors. These factors include: the severity of the crime, whether the suspect poses an immediate threat, and whether the suspect is actively resisting arrest. Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995), following Graham v. Connor, 490 U.S. 386, 396 (1989). Further, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." Graham, 490 U.S. at 396 (internal quotations and citation omitted).

The record clearly shows that Feldman was resisting arrest, first by telling the uniformed police officers that he would not leave until they showed him identification, and then by actively struggling when the officers attempted to remove him. In the ensuing struggle to handcuff him, Feldman claims that the officers "wrestled" him to the ground and that one of them kicked him in the head. Feldman Brief at 35. The officers deny kicking Feldman and claim to have used an "arm bar" technique to subdue him. App. at 43. Still, we agree with the District Court's assessment that, even accepting Feldman's description of the arrest, the force resulted as part of the struggle and was not excessive in light of Feldman's physical resistance. The force was reasonable under

9

<u>Groman</u> and fails to amount to a § 1983 violation. We therefore affirm the District Court's dismissal of Feldman's excessive force claims against the City of Pittsburgh and the officers.

**V.**

Feldman raises state law assumpsit claims, arguing that, as a registered student, the College breached a contractual undertaking with him by barring him from the computer lab. We now affirm the District Court's dismissal of these claims, although on different grounds.

The College defendants concede that the District Court erred in basing its dismissal on the application of a six-month limitations period without considering whether Feldman had a reasonable excuse for not filing his claim within the period and whether the College had actual or constructive notice of Feldman's claim. <u>See</u> 42 Pa. Cons. Stat. Ann. §§ 5522(a)(1), 5522(a)(2), 5522(a)(3)(iii). Feldman also contends that the District Court erred in barring his state claims based on the general government immunity provisions of the Tort Claims Act. He argues that the statute does not apply to his contract-based assumpsit claim.

In order to have an action in assumpsit, Feldman must have shown that a valid contract existed. <u>Torchia v. Keystone Foods Corp.</u>, 635 A.2d 1082, 1086 (Pa. Super. 1993). Creating a valid contract requires an offer, an acceptance, and consideration, or a "meeting of the minds." <u>Yarnall v. Almy</u>, 703 A.2d 535, 538 (Pa. Super. 1997). Because

10

Feldman and the College apparently had different ideas as to what the "contractual terms" of lab use were, they never had a meeting of the minds. At a deposition, the College defendants offered testimony in which they explained the policies of allowing students access to the lab only when their classes are in session and prohibiting use of the lab to conduct personal business, as Feldman had been doing. App. II at 512, 454. Feldman claims that he was qualified to use the lab since he was registered for a class in May, although that class was not scheduled to begin until June.

These arguments illustrate the obvious discrepancy between Feldman's and the College's understandings of the conditions governing lab use. This discrepancy supports the College's argument that it had insufficient agreement with Feldman as to the terms of lab use to form a contract. "Feldman's conduct establishes that he did not know the terms of the agreement [the College] offered" . . . "assuming that [the College] ever made him an offer." College defendants Brief at 41, 38.

Feldman further argues that the College never identified any written policy limiting lab access to students actively participating in classes. This argument is unpersuasive. The College is not required to provide written notice of every regulation governing the use of its facilities in order to enforce those regulations. While the College's handbook provides some information as to computer lab use, the handbook does not contain an exhaustive catalogue of every College policy. App. III at 664. The information it provides cannot be viewed as the basis of a contract, making any

11

regulations not contained in it unenforceable. Further, simply being registered for a class scheduled to start on some future date should not be construed as entitling the registrant to have access to the College's facilities before the class begins. The College should not have to rely on a written policy in order to reserve its facilities for use by its students enrolled in active, ongoing classes.

Therefore, because a valid contract was never formed, we affirm the District Court's dismissal of Feldman's contract claim. Because no contract existed, it is unnecessary for us to address the District Court's failure to consider exceptions to the six-month limitations period for bringing a claim against a government unit.

## VI.

Finally, this Court also agrees with the District Court's order quashing a subpoena and denying a motion to compel Micron Electronics, Inc. ("Micron") to provide a list of computer purchasers in Southwestern Pennsylvania from May 22 to May 30, 1995 in Feldman's attempt to identify and locate a potential witness to his arrest.

Under Federal Rule of Civil Procedure 45(c)(3)(B)(i), a court may quash or modify a subpoena that would require disclosure of trade secrets. In American Ice Co. v. Royal Petroleum Corp., 261 F.2d 365, 367 (3d Cir. 1958), this Court held that customer lists are confidential and entitled to protection as trade secrets. We agree with the District Court's finding that compliance with Feldman's request would be "burdensome and require disclosure of confidential information." App. I at 152. Further, Feldman failed to claim

that "more diligent discovery was impossible" as required by this Court in <u>Gallas v. Supreme Court of Pennsylvania</u>, 211 F.3d 760, 777 (3d Cir. 2000) (holding that the Court "will not upset a district court's conduct of discovery procedures absent a demonstration that the court's action made it impossible to obtain crucial evidence, and implicit in such a showing is proof that more diligent discovery was impossible") (internal quotations and citation omitted).  For these reasons, we affirm the District Court's order quashing Feldman's subpoena of Micron's customer list.

Finally we consider Micron's motion for sanctions under 28 U.S.C. § 1927 for imposing unreasonable and unnecessary costs in litigation and under Rule 38 of the Federal Rules of Appellate Procedure for Feldman's pursuit of a frivolous issue on appeal.  Based on our careful review of Micron's contention and the arguments made by Feldman's pro bono counsel as to the relevance of the subpoena, we conclude that Micron's claim has no merit.

Accordingly, for the reasons stated above, we affirm the judgment of the District Court.

_____

TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.

_/s/  Julio M. Fuentes_
Circuit Judge

_____

*Lee Feldman v. Community College of Allegheny County, et al., No. 00-3355*

Becker, *Circuit Judge, Concurring and Dissenting.*

I join in Part II (the First Amendment Claim) and Part III (the False Arrest, Imprisonment & Malicious Prosecution claims). I dissent from Part IV (the Excessive Force claim) and Part V (the Assumpsit claim). With respect to Part VI, I join in the judgment but on different grounds. Since this is a not precedential opinion, I limit my discussion to my own ratio decidendi.

I.

What stands out for me with respect to the excessive force claim is that the record, which we must construe in the light most favorable to Feldman at this procedural state, reflects that he was kicked in the head, a fact corroborated by photographs which show very ugly bruises. Feldman's testimony that he was kicked in the head is corroborated by the testimony of Byarr Meekins, one of the computer lab instructors, who stated in his deposition: "I think one of them had kicked him, but I really didn't look at the whole complete thing; but I think I might have turned and saw him get kicked." True, when asked if he could describe the officer who kicked Feldman, Meekins replied: "No, I can't." However, taken in the light most favorable to Feldman, the existence of this third party testimony, shaky though it may be, along with Feldman's own account, leads me to conclude that there is a genuine issue of material fact as to the excessive force claim that should have

15

been resolved by a jury and not by the judge.

II.

I also believe that Feldman's assumpsit claim presents a jury issue. The Community College Student Handbook provides:

> The Computing Suite, located in L-500, provides a number of services to students, faculty and staff of Allegheny Campus. There are six separate lab facilities that are coordinated and maintained bu the Department of Educational Computer Services. Students who are enrolled in courses that require the use of computers have preference in the use of Computing Suite facilities.

(Student Handbook, p. 23, App. 244).

As far as I can tell, all this passage demonstrates is that students enrolled in courses that require use of computers (presumably computer science courses, although potentially others as well) will be given priority in the computer lab. This statement does not in any way support the contention that students not enrolled in computer courses, or who are simply registered as opposed to enrolled, will not have access to the computers.

Although Feldman had not started his course, he was enrolled. A number of CCAC witnesses assert that Feldman was not entitled to use the computer lab, either because he was not currently enrolled or because he was not doing course-related work. However, none of the CCAC defendants can point to written policy that supports their contentions. In short, given Feldman's long-standing use of the computer lab, and given the fact that the student handbook seems to imply that he had the right to do so (or at the very least does not indicate that he did not have the right to do so), I think that there is enough here to create a genuine

16

issue of material fact as to whether a contractual obligation existed on the part of CCAC to allow Feldman to use the computers.

III.

Feldman served a subpoena on Micron seeking a list "of all individual computer purchasers from Southwestern Pennsylvania during May 22 through May 30, 1995." (App. 102). In serving this subpoena, Feldman was trying to locate a woman with whom he had spoken in the computer lab on the evening of May 30, 1995, just before the events that led to his arrest. That woman, according to Feldman, witnessed the entire arrest and would have been a material witness who could corroborate his version of events. Apparently, in the course of her conversation with Feldman, she mentioned that she had just purchased a Micron computer, hence his attempt to locate her through the subpoena.

In my view, the discovery issue is very close. I do not believe that it would have been burdensome for Micron to search its computerized records to reveal the names of individual computer purchasers from Southwestern Pennsylvania during the period May 22 through May 30, 1995. I also believe that the information was critical to Feldman's case, which weighs in his favor on the issue. And I am underwhelmed by Micron's confidentially argument; at all events the information could have been subjected to a protective order.

I concur in the judgment only because I believe that Feldman could have sought the information from CCAC. For example, Feldman could have tried to subpoena CCAC for a list of female computer science majors. I am therefore satisfied that Judge Lee did not abuse

17

his discretion in denying the discovery request, which would at least have imposed some expense on Micron.

Finally I note that because of the closeness of the issue and the strong argument made by Feldman's pro bono counsel, I believe that Micron's motion for sanctions under 28 U.S.C. § 1927 for imposing unreasonable and unnecessary costs in litigation and under Rule 38 of the Federal Rules of Appellate Procedure for pursuing a frivolous issue on appeal is clearly without merit and was properly denied.