# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ross James,                     :

                                   :

                Appellant   :

                                     :

           v.                  : No. 1303 C.D. 2019

                                     : Submitted: October 2, 2020

Community College of Allegheny   :

County, Bridgett Golman, Jane      :

Greenwood, Sumana Misra-Zets,   :

Don Breitbarth, Lawrence Doperak,  :

Michelle Tedder, Jeffrey Labella and :

City of Pittsburgh                    :

OPINION NOT REPORTED

MEMORANDUM OPINION
PER CURIAM                                    FILED: August 20, 2021

Ross James (Appellant) appeals *pro se* from the August 30, 2019 orders of the Allegheny County Court of Common Pleas (trial court), which sustained the preliminary objections filed by the Community College of Allegheny County, Bridgett Golman, Jane Greenwood, Sumana Misra-Zets, Don Breitbarth, Lawrence Doperak, and Michelle Tedder (collectively, CCAC), the City of Pittsburgh (City), and City of Pittsburgh police officer Jeffrey Labella (Officer) (together, City of Pittsburgh); dismissed Appellant's Amended Complaint with prejudice; and granted the City of Pittsburgh's Petition to Strike or Open Judgment (Petition to Strike). This appeal stems from an incident on August 25, 2017, on CCAC's campus when Appellant was asked to leave the hallway of an administration building, and after he refused, he was arrested for defiant trespass and disorderly conduct, and later

expelled from CCAC for violations of CCAC's Student Code of Conduct (Code). After careful review, we affirm.

## I. Facts and Procedural Background

As summarized by the trial court in its Pa. R.A.P. 1925(a) opinion, the facts giving rise to Appellant's claims are as follows:

> On or about August 25, 2017, [Appellant] was on the CCAC campus and was observed sitting on the floor outside an Administrative Office. Although not established of record, he was causing a disturbance by admittedly being too loud and having an apparent issue with the college. An officer was called to the scene of the disturbance, Defendant [Officer]. [Officer] attempted to question [Appellant] about his situation, but was given no response, except for evasiveness and hostility. [Appellant] did not have a school [identification (ID)] on his person to produce for [Officer] and may not have currently been a student. For about thirty five (35) minutes, multiple employees and [Officer] tried to communicate with [Appellant] to learn his reasons for being on campus and unable to show his ID. He refused to communicate or leave the campus or be helpful as to his lack of ID. The situation caused by his behavior resulted in an arrest.

Trial Court 11/15/19 Opinion at 1-2.

As a result of the August 25, 2017 incident at CCAC, Appellant was arrested and charged with defiant trespass and disorderly conduct. Original Record (O.R.) at 126-29.[1] He was found guilty of these charges on November 21, 2017, and sentenced to 10 days' confinement in the Allegheny County Jail. After Appellant's summary appeal, Appellant's convictions were overturned, and he was adjudged not guilty on September 19, 2018. *Id.* at 46-51, 128.

---

[1] Because the Original Record was filed electronically and was not paginated, the page numbers referenced herein reflect electronic pagination.

Also as a result of the August 25, 2017 incident, Appellant was subject to discipline by CCAC. In a letter dated October 18, 2017, CCAC notified Appellant that he was charged with violating CCAC's Code, which is part of the Student Handbook, specifically for failure to comply with reasonable requests, concerning behavior, and unauthorized entry, based on reports of improper conduct submitted to CCAC. O.R. at 225-28. In a letter dated October 19, 2017, CCAC notified Appellant that a judicial board hearing was scheduled for October 26, 2017, to address the charges. *Id.* at 229-34. This letter outlined the procedures to be followed by Appellant and CCAC for the hearing, including Appellant's right to submit a written response, to produce witnesses, to choose a CCAC advisor or an attorney to assist at the hearing, to receive written documentation relevant to the charges, and provided a list of the hearing officers that would preside over the hearing. *Id.* Appellant replied to CCAC in an email dated October 22, 2017, in which he denied the charges, chose a CCAC advisor, and requested that CCAC provide records relevant to the charges. *Id.* at 61.

Appellant's disciplinary hearing with CCAC took place on October 26, 2017, and October 30, 2017, after which CCAC's Conduct Hearing Board (Board) determined that Appellant's actions violated the Code, and sanctioned him by permanently separating, or expelling him, from CCAC. CCAC notified Appellant of the results of the hearing and his expulsion in a letter dated November 1, 2017. O.R. at 235-38. The Board found that Appellant failed to comply with reasonable requests, demonstrated concerning behavior, and trespassed on CCAC property, and included specific findings and references to the Student Handbook. *Id.* The Board specifically found that Appellant violated the Student Handbook by:

> 1. Failure to comply to reasonable requests - failure to comply with directions of college officials or law

3

enforcement officers during the performance of their duties and/or failure to identify oneself to these persons when requested to do so ([C]ode violation related to Respect, page 29, CCAC Student Handbook, 2017-2018).

2. Concerning behavior - inappropriate conduct which is disorderly, disruptive or indecent while on campus or at functions sponsored by, or participated in by the college ([C]ode violation related to Respect, page 29).

3. Unauthorized entry - misuse of access privileges to college premises or unauthorized entry to or use of buildings, including trespass ([C]ode violation related to College Community, page 28).

The [Board] made the following finding of fact: [Appellant] has been unwilling to take responsibility for any of the confrontations in which he has been involved with campus administration and campus security staff.

*Id.*

The letter also stated that if Appellant wished to appeal this decision, he must file a written appeal with CCAC's Dean of Students, Bridgett Golman, within three calendar days of the date of the letter. O.R. at 238. The record contains no evidence that Appellant availed himself of his right to appeal CCAC's decision.

On or about August 20, 2018, Appellant filed a complaint in the trial court alleging that CCAC and the City of Pittsburgh violated his rights when they arrested and expelled him. O.R. at 3-18. CCAC filed preliminary objections in the nature of a demurrer, which were sustained, and the trial court permitted Appellant to file the Amended Complaint, which he did on or about March 11, 2019. *Id.* at 23-55, 141-81. The Amended Complaint contained 70 counts against CCAC and the City of Pittsburgh, all arising out of Appellant's expulsion and arrest. The Amended Complaint contained a count against the City of Pittsburgh which was not in the original complaint. *Id.* at 164. The Amended Complaint added Michelle Tedder as

4

an additional CCAC defendant, alleging that she failed to credit Appellant's tuition account with a scholarship grant, thus constituting breach of contract and fraud. CCAC again filed preliminary objections in the nature of a demurrer, seeking dismissal of Appellant's Amended Complaint. *Id.* at 182-243.

Appellant then filed a praecipe for the entry of a default judgment, averring that Officer failed to timely respond to the Amended Complaint. O.R. at 244-48. Within 10 days after a default judgment was entered, the City of Pittsburgh filed its appearance, preliminary objections in the nature of a demurrer, and the Petition to Strike the default judgment, alleging that Officer was never properly served with the Amended Complaint. *Id.* at 249-52, 253-93, 294-401. Appellant filed a response to CCAC's and the City of Pittsburgh's preliminary objections. *Id.* at 427-82. The parties presented oral argument on the preliminary objections and the Petition to Strike on August 29, 2019. In four separate orders dated August 30, 2019, the trial court sustained CCAC's and the City of Pittsburgh's preliminary objections, dismissed Appellant's Amended Complaint with prejudice, and granted Officer's Petition to Strike. Appellant timely appealed all four orders to this Court.[2]

---

[2] This Court's standard of review from a trial court's orders granting preliminary objections and dismissing a complaint is limited to determining whether the trial court abused its discretion or committed an error of law. A demurrer may be sustained only where the complaint is clearly insufficient to establish the complainant's right to relief. Preliminary objections in the nature of a demurrer must admit as true all well-pled material, relevant facts, and every inference fairly deducible from those facts. *Palmer v. Bartosh*, 959 A.2d 508, 512 n.2 (Pa. Cmwlth. 2008). This Court is not required to accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. *Pennsylvania State Lodge v. Department of Labor and Industry*, 692 A.2d 609, 613 (Pa. Cmwlth. 1997), *aff'd*, 707 A.2d 1129 (Pa. 1998). Because sustaining a demurrer results in the denial of complainant's claims or in a dismissal of his suit, preliminary objections in the nature of a demurrer should be sustained only in cases that clearly fail to state a claim upon which relief may be granted. *Palmer*, 959 A.2d at 512 n.2. Because preliminary objections in the nature of a demurrer present a question of law, this Court's standard of review is *de novo* and the scope of review is plenary. *Brown v. Wetzel*, 179 A.3d 1161,

**(Footnote continued on next page…)**

## II. Discussion

### A. Claims Against CCAC

CCAC argues that it is immune from Appellant's state law claims under the provisions of the Judicial Code commonly referred to as the Political Subdivision Tort Claims Act, 42 Pa. C.S. §§8541-8564 (Tort Claims Act). Section 8541 of the Tort Claims Act provides that, "except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S. §8541. An employee of a local agency is liable "only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter." 42 Pa. C.S. §8545. A local agency or its employees may be liable for claims of negligence that fall into one of the nine enumerated exceptions under Section 8542(b) of the Tort Claims Act.[3] A local agency is not immune if the employee's act is judicially determined to constitute a "crime, actual fraud or willful misconduct." 42 Pa. C.S. §8550.

CCAC argues that it is a local agency for the purpose of governmental immunity. *Community College of Allegheny County v. Seibert*, 601 A.2d 1348 (Pa. Cmwlth. 1992), *aff'd*, 622 A.2d 285 (Pa. 1993). CCAC also notes that Appellant

___

1164 n.2 (Pa. Cmwlth. 2018). Whether immunity applies is also a question of law subject to this Court's *de novo* review. *Id.*

Similarly, the standard of review from a trial court order granting a motion to open or strike a default judgment is whether the trial court abused its discretion or committed an error of law. This Court's standard of review on a petition to strike is *de novo* and our scope of review is plenary. *Oswalt v. WB Public Square Associations, LLC*, 80 A.3d 790, 793 n.2 (Pa. Super. 2013).

[3] Under Section 8542(b)(1) through (9), the enumerated exceptions to governmental immunity are: vehicle liability; care, custody or control of personal property; real property; trees, traffic controls, and street lighting; utility service facilities; streets; sidewalks; care, custody, or control of animals; and sexual abuse. 42 Pa. C.S. §8542(b)(1)-(9).

did not aver or argue that CCAC's acts fall into one of the enumerated exceptions to liability. CCAC also argues that Appellant failed to plead any facts that CCAC engaged in conduct that could support a judicial determination of willful misconduct. CCAC further argues that "general averments" or "bare recitations" that a defendant acted intentionally, willfully, or maliciously are insufficient to establish the required wrongful intent to overcome immunity. *Orange Stones Company v. City of Reading*, 87 A.3d 1014, 1026 (Pa. Cmwlth. 2014). CCAC argues that the complaint must allege facts demonstrating that the alleged criminal, malicious, or willful misconduct was performed with intent to cause harm, which Appellant here did not do. *R.H.S. v. Allegheny County Department of Human Services, Office of Mental Health*, 936 A.2d 1218, 1230 (Pa. Cmwlth. 2007). CCAC further notes that the affirmative defense of immunity may be raised as a preliminary objection when it is apparent on the face of the pleading that the cause of action does not fall within any of the enumerated exceptions. *Orange Stones*, 87 A.3d at 1022.

Appellant does not argue that CCAC's actions fall within any of the enumerated exceptions to the Tort Claims Act. Appellant argues that the trial court erred by failing to accept as true the 70 averments in his Amended Complaint where he alleged that CCAC's actions were malicious and intentional.

We agree that CCAC is a local agency for the purpose of governmental immunity. *Seibert*. We also agree that CCAC employees are liable only to the same extent as CCAC is liable pursuant to Section 8545 of the Tort Claims Act. This Court has carefully reviewed Appellant's Amended Complaint and finds that it contains only general averments that CCAC acted maliciously or intentionally, and does not include well-pleaded facts to support these general averments. We cannot infer malicious intent or intentional conduct by CCAC or its employees toward

7

Appellant based on general averments without facts to support these averments. For this reason, we conclude that the trial court correctly found that CCAC and its employees are immune from the state law claims asserted by Appellant.

CCAC further argues that to the extent it is not immune from Appellant's state law claims, those claims were properly dismissed because Appellant failed to plead specific facts necessary for each element of each asserted cause of action. Appellant responds that the trial court erred when it dismissed his various state law claims. Although we conclude that the trial court correctly dismissed Appellant's state law claims against CCAC on the basis of immunity under the Tort Claims Act, we will review each cause of action or purported cause of action for any alleged legal errors.

Appellant argues that CCAC abused its discretion when it expelled him, and that contract rights refers to the contract he believes CCAC breached when it failed to offer him educational services in exchange for the tuition and fees owed for these services. CCAC responds that Appellant's claims of abuse of discretion and contract rights are not recognized causes of action and should be dismissed. The trial court dismissed each of these claims because they are "not causes of action." Trial Court Opinion at 4. We agree that the trial court correctly dismissed Appellant's claims of abuse of discretion and contract rights because they are not recognized causes of action under Pennsylvania law. Abuse of discretion is a standard of review and not a cause of action. *Palmer*, 959 A.2d at 512 n.2. Although Appellant's stated claim of contract rights is not a cause of action, we fully reviewed Appellant's claims that CCAC breached a contract, or tortiously interfered with a contract below.

8

Appellant next argues that CCAC's contract to provide educational services to him should be implied, and that CCAC breached this contract by expelling him in violation of its Student Handbook. CCAC responds that Appellant's claim of tortious interference with contract must fail, because Appellant's Amended Complaint failed to plead the existence of a contract or its terms. CCAC denies such a contract to provide educational services exists. The trial court found that Appellant's claims of tortious interference with the "alleged contract" should be dismissed because Appellant failed to show that such a contract exists. The Superior Court has held that the relationship between a privately funded college and a student has traditionally been defined as "strictly contractual in nature." *Reardon v. Allegheny College*, 926 A.2d 477, 480 (Pa. Super. 2007).[4] In contrast, this Court has held that a public university's student handbook does not constitute a contract between a student and a public university. *Tran v. State System of Higher Education*, 986 A.2d 179, 182 (Pa. Cmwlth. 2009). CCAC is a public university under Section 1901-A(4) of what is popularly referred to as the Community College Act of 1963[5] and *Seibert*. Therefore, CCAC's Student Handbook is not a contract with its students, and CCAC cannot be liable to Appellant for breaching the terms of its Student Handbook under a contract theory. Therefore, we conclude the trial court did not err when it dismissed Appellant's claim of tortious interference.

---

[4] "In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Compensation Board of Review*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018) (citation omitted).

[5] Act of August 24, 1963, P.L. 1132, *formerly*, 24 P.S. §§5201-5214, repealed and re-enacted by the Act of July 1, 1985, P.L. 103, 24 P.S. §§19–1901–A - 19–1918–A.

Appellant next argues that CCAC's conduct in expelling him was an intentional infliction of emotional distress, and that its behavior amounts to outrageous conduct. Although Appellant alleges that he suffered emotional distress many times in his Amended Complaint, he does not provide specific facts to support this general averment. CCAC responds that Appellant's claim of intentional infliction of emotional distress was properly dismissed because Appellant failed to plead the necessary elements of this tort. CCAC argues that a claim of intentional infliction of emotional distress requires the following elements: "(1) a person who by extreme and outrageous conduct (2) intentionally or recklessly causes (3) severe emotional distress to another," citing *Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Cmwlth. 2010). To establish the first element, the complaint must allege facts that would lead a reasonable person to exclaim the conduct is outrageous. *Kazatsky v. King David Memorial Park, Inc.*, 527 A.2d 988, 991 (Pa. 1987). CCAC argues that merely stating that the conduct is outrageous, without specific facts demonstrating how the alleged acts were outrageous, is insufficient to support a claim of intentional infliction of emotional distress. *Reardon*. CCAC argues that Appellant's bare legal conclusions alleging CCAC's conduct in expelling him for violations of the Student Handbook are insufficient to support the first element for outrageous conduct. We agree with the trial court that Appellant's claim for intentional infliction of emotional distress must fail because Appellant did not plead specific facts to support his averment that CCAC's conduct was outrageous. Under the applicable standard of review, this Court is not required to accept as true conclusions of law or expressions of opinion. *Pennsylvania State Lodge*, 692 A.2d at 613.

10

Appellant next argues that CCAC defamed him when its employees made false allegations during his expulsion proceedings that he violated the Code and committed a crime. CCAC responds that the trial court correctly dismissed Appellant's claims of defamation and defamation *per se*, because Appellant did not aver the necessary facts to support this claim. Defamation requires a plaintiff to establish (1) the defamatory nature of the alleged communication; (2) the publication of the communication by the defendant; (3) the application of the communication to the plaintiff; (4) the recipient's understanding of the meaning of the communication; (5) the recipient's understanding that the communication is intended to be applied to the plaintiff; (6) special harm to the plaintiff; and (7) abuse of a conditionally privileged occasion. *Reardon*, 926 A.2d at 484 (citations and footnote omitted). Determining whether a communication is slanderous is a question of law. A communication is slanderous if it is intended to lower the view of the target of the communication in the community, or if it is intended to deter third persons from associating with the target. A statement that is merely an expression of an opinion cannot constitute slander. *Id.* CCAC argues that Appellant's allegations in Counts 29, 32, 52, and 65 do not support a defamation claim, because they are either expressions of opinion, factual in nature or not intended to be slanderous. The trial court found Appellant's defamation claims should be dismissed because he failed to allege any publication. Trial Court Opinion at 4. We have carefully reviewed the defamation claims in Appellant's Amended Complaint. We agree with CCAC that these statements are not defamatory under the law, because they were expressions of opinion, factual in nature, or not intended to be slanderous. We agree with the trial court that the statements were not defamatory, because Appellant failed to aver

11

how and where these statements were published in the course of discipline proceedings that are not open to the public.

Appellant next argues that CCAC invaded his privacy and placed him in a false light during the course of his disciplinary proceedings, when its employees stated he was a criminal who deserved to be expelled. Appellant points to two averments in his Amended Complaint to support this claim, although he did not argue this issue in detail in his brief to the Court. CCAC responds that Appellant's claim of false light-invasion of privacy was properly dismissed because Appellant failed to plead facts necessary to support each element of this tort. CCAC argues the tort of false light-invasion of privacy involves "publicity that unreasonably places the other in a false light before the public." *Rush v. Philadelphia Newspapers, Inc.*, 732 A.2d 648, 654 (Pa. Super. 1999). A cause of action for invasion of privacy will be found where a major misrepresentation of a person's character, history, activities, or beliefs is made that could reasonably be expected to cause a reasonable man to take serious offense. The required elements a plaintiff must prove are publicity, given to private facts, which would be highly offensive to a reasonable person, and which are not of legitimate concern to the public. *Id.* Invasion of privacy requires an investigation into private affairs and does not include conduct about which a person does not have an expectation of privacy. *Tagouma v. Investigative Consultant Services, Inc.*, 4 A.3d 170 (Pa. Super. 2010). CCAC argues that the Appellant's invasion of privacy claim must fail, because he had no expectation of privacy in his observed behavior on CCAC's campus, nor in the disciplinary process resulting from his behavior. The trial court did not make specific findings on the invasion of privacy claim, relying on its finding of CCAC's immunity under the Tort Claims Act. After careful review, we find that Appellant waived his invasion of

privacy claim, because he failed to present argument on it in his brief to this Court. *See* Pa. R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part . . . the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."); *Commonwealth v. Spotz*, 716 A.2d 580, 585 n.5 (Pa. 1998), *cert. denied*, 526 U.S. 1070 (1999) (holding that the failure to develop issue in appellate brief results in waiver); *Browne v. Department of Transportation*, 843 A.2d 429, 435 (Pa. Cmwlth. 2004) ("At the appellate level, a party's failure to include analysis and relevant authority results in waiver."). Even if Appellant had presented argument on this issue, this claim was properly dismissed because Appellant failed to plead sufficient facts to satisfy the elements of the tort of invasion of privacy.

Appellant next argues that the trial court erred when it dismissed his claim that CCAC violated his rights under the Federal Educational Rights and Privacy Act (FERPA), 20 U.S.C. §1232g. Appellant avers that CCAC failed to provide educational records to him and improperly disclosed educational records about him, during disciplinary proceedings. Appellant argues that the trial court improperly dismissed his FERPA claim because the Tort Claims Act does not immunize CCAC from claims under federal law. CCAC responds that the FERPA claim was properly dismissed, because the United States Supreme Court specifically held there is no private cause of action under FERPA. *Gonzaga University v. Doe*, 536 U.S. 273 (2002). Although the trial court did not address the FERPA claim directly, we find that Appellant's FERPA claim must fail, because an individual does not have a private cause of action under FERPA. *Id.*

Appellant next argues that the trial court improperly dismissed his constitutional claims against CCAC. Appellant argues that because he averred

CCAC acted under color of state law multiple times in his Amended Complaint, the averments were sufficient to satisfy the requirements to sustain his constitutional claims. CCAC responds that the trial court properly dismissed Appellant's constitutional claims because Appellant failed to plead the necessary facts to support these claims. By way of background, CCAC argues that Section 1983, 42 U.S.C. §1983 (Section 1983), is the proper vehicle for vindicating rights under the United States Constitution, and that such claims may be brought in state court. *Jae v. Good*, 946 A.2d 802, 809 (Pa. Cmwlth. 2008). Section 1983 provides a vehicle for imposing liability upon a person who, under color of law, deprives another person of "any rights, privileges, or immunities secured by Constitution and laws." *Id.* However, even liberal construction of pleadings "does not permit unpled elements [to] be pulled from thin air and grafted onto the pleading." *McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2010). CCAC argues that a Section 1983 inquiry must focus on two elements: (1) whether the conduct complained of was committed by a person acting under color of state law and (2) whether this conduct deprived a person of rights secured by the Constitution. *Palmer*, 959 A.2d at 514.

CCAC argues that Appellant provided legal conclusions but not facts to support the first element that CCAC employees acted under color of state law. *Uniontown Newspapers, Inc. v. Roberts*, 893 A.2d 846, 849 (Pa. Cmwlth. 2006). CCAC argues that the mere fact that CCAC employees are employed by a public community college is insufficient to establish their conduct was under color of state law. The trial court found that Appellant failed to plead specific facts to support claims that CCAC acted under color of state law. We agree that the trial court correctly found that Appellant failed to plead that CCAC acted under color of state

14

law. Legal conclusions without specific facts are insufficient to support this element of a Section 1983 claim. *Pennsylvania State Lodge.*

Appellant argues that CCAC's disciplinary hearing lacked due process, that the hearing was unfair to him, and allowed CCAC to trample on his rights. CCAC responds that Appellant failed to provide sufficient facts to support the second element of a Section 1983 claim, namely, that CCAC's conduct deprived Appellant of his constitutional rights.

CCAC argues that in order to sustain a due process claim, a plaintiff must allege that he was deprived of a fundamental interest encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and that the procedures available to him did not provide due process of law. *See* U.S. Const. amend XIV; *Todara v. Buskirk*, 96 A.3d 414, 420 (Pa. Cmwlth. 2014). CCAC argues that although courts may recognize a property right in continued employment in certain circumstances, courts have not recognized a fundamental property right in continued college enrollment. *Norris v. Montgomery County Community College,* No. 15-4741, 2016 WL 2646733 at \*3 (E.D. Pa 2016). CCAC further argues that the procedures it followed during Appellant's disciplinary proceedings provided the necessary notice and opportunity to be heard to satisfy procedural due process. CCAC cites *Ruane v. Shippensburg University*, 871 A.2d 859, 862 (Pa. Cmwlth. 2005) (citations omitted), where our Court stated as follows:

> Without question, prior to the imposition of disciplinary sanctions, [appellant] was entitled to a measure of due process comporting with basic principles of fundamental fairness. At a minimum the University had to provide [appellant] with notice of the charges and some opportunity for a hearing. However, the University was not obligated to provide a "full-dress judicial hearing,"

15

subject to the rules of evidence and or representation by counsel.

CCAC further argues that a student handbook at a public university does not constitute a binding contract between the school and its students, pursuant to *Tran*. CCAC argues even if it did, an educational institution's failure to follow its own policies is not, in itself, a due process violation. *Phat Van Le v. University of Medicine & Dentistry of N.J.*, 379 F. App'x 171, 174-75 (3d Cir. 2010). After careful review, we find that the trial court did not err in denying Appellant's due process claim against CCAC. The record shows that CCAC provided Appellant two letters describing his violations of the Code, the hearing procedures, his right to choose an advisor, and to bring an attorney. O.R. at 225-28, 229-34. Appellant emailed CCAC's dean of students with his responses and requests prior to the hearing. *Id.* at 61. The disciplinary hearing took place on two days, after which CCAC informed Appellant in writing that he was to be expelled based on his violations of the Code. O.R. at 235-38. The letter also described Appellant's right to appeal to the dean of students, which he did not do. Based on our review of the record and applicable case law, we cannot conclude the trial court erred by dismissing Appellant's due process claims against CCAC.

Appellant next argues that the trial court erred when it dismissed his claim that CCAC violated his right to equal protection. Appellant states in his brief to this Court that CCAC violated his right to equal protection, arguing he was "singled out as a class of one for punishment for his mere presence on campus and because he declined to answer the government's questions about an alleged crime." (Appellant's Brief at 42). CCAC responds that Appellant's claim that he was singled out as a class of one was properly dismissed, because his Amended Complaint failed to aver the required elements to satisfy this claim. CCAC argues that a plaintiff

16

asserting a class of one equal protection claim must aver the existence of similarly situated individuals who were treated differently than the plaintiff. *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). CCAC argues that because Appellant did not aver he was a member of a suspect or sensitive class, whether CCAC violated his constitutional rights should be reviewed under the rational basis test. *Palmer by Palmer v. Merluzzi*, 868 F.2d 90 (3d Cir. 1989). CCAC further argues that because Appellant does not have a fundamental right to continued college education under *Norris*, its actions must be reviewed under the rational basis test. CCAC argues it has a clear interest in enforcing standards of student behavior, and that addressing violations through the disciplinary process is rationally related to this interest. Appellant does not address or develop this argument in his brief beyond the statement quoted above, therefore, we conclude that he waived it. Pa. R.A.P. 2119(a); *Spotz*; *Browne*. Even if this claim is not waived, we conclude that Appellant failed to plead the necessary facts giving rise to a class of one equal protection claim.

Appellant next argues that CCAC retaliated against him, because he declined to answer CCAC's questions during the disciplinary proceedings that resulted in his expulsion. Appellant argues that CCAC's conduct violated his constitutional rights to remain silent under the First and Fifth Amendments.[6] Appellant argues that he has a right to remain silent under both the First and Fifth Amendments. Appellant avers that CCAC retaliated against him, eventually

---

[6] The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." U.S. Const. amend. I. In turn, the Fifth Amendment provides, in relevant part: "No person shall … be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V.

expelling him, because he chose to remain silent regarding his status as a student. Appellant devotes a significant portion of his argument to this Court reviewing case law analyzing an individual's right to remain silent. Appellant is correct that the right to remain silent stems from the First and Fifth Amendments, but the question remains as to whether that right is implicated in CCAC's disciplinary proceedings.

CCAC responds that Appellant failed to aver the facts necessary to sustain a claim that it violated his constitutional rights under the First and Fifth Amendments. To sustain a retaliation claim under the First Amendment, a plaintiff must allege (1) constitutionally protected conduct, (2) retaliation sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the protected conduct and the retaliation. *Thomas v. Independence Township*, 463 F.3d 285, 296 (3d Cir. 2006). CCAC argues that where the speech in question is not constitutionally protected, a student may be disciplined without violating the First Amendment. *J.S. ex rel. H.S. v. Bethlehem Area School District*, 757 A.2d 412, 424 (Pa. Cmwlth. 2000). CCAC argues that the case of *Feldman v. Community College of Allegheny County*, 85 F. App'x 821 (3d Cir. 2004), is directly applicable to this case. In *Feldman*, a student alleged that CCAC and Pittsburgh police officers retaliated against him for statements he made alleging racial and religious discrimination by a CCAC employee. The issue arose when CCAC disciplined the student, and police officers arrested him, following a dispute over his use of CCAC's computer lab when he was not registered as a CCAC student. In *Feldman*, the Court found that the student's comments did not create a matter of public concern, as determined by the "content, forum and context" of the statement as revealed by the record. *Id.* at 825. CCAC argues that, like the student in *Feldman*, Appellant's refusal to answer CCAC's or Officer's questions about his status on

18

campus, and his refusal to answer questions about the incident during disciplinary proceedings, were not a matter of public concern, and, therefore, are not protected activity covered by the First Amendment. CCAC also argues that Appellant cannot avoid discipline by remaining silent about his misconduct during disciplinary proceedings.

Similarly, CCAC argues that Appellant's privilege against self-incrimination protected by the Fifth Amendment does not apply to CCAC's discipline proceedings, but is limited to criminal proceedings and custodial interrogations. *Miranda v. Arizona*, 384 U.S. 436 (1966). CCAC further notes that the privilege against self-incrimination does not extend "'to consequences of a noncriminal nature such as threats of liability in a civil suit, disgrace in the community or loss of employment.'" *Commonwealth v. Moody*, 843 A.2d 402, 406 (Pa. Super. 2004) (citations omitted). CCAC argues that Appellant did not aver that CCAC subjected him to criminal proceedings or to a custodial interrogation, and therefore, his claim that CCAC violated his Fifth Amendment privilege against self-incrimination was properly dismissed.

Appellant is correct that the right to remain silent stems from the First and Fifth Amendments, but they do not protect Appellant here. Because his silence toward CCAC employees did not address or create a matter of public concern, we find that his First Amendment claims were properly dismissed. *Feldman.* Because Appellant was not compelled by CCAC to give testimony in a criminal proceeding or in a custodial interrogation, we find that his Fifth Amendment claims were properly dismissed. *Miranda*; *Moody*.

CCAC next argues that its employees are entitled to qualified immunity from Appellant's constitutional claims. CCAC argues that the doctrine of qualified

19

immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted).

> Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting).
>
> Because qualified immunity is "an immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis deleted). Indeed, we have made clear that the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that "insubstantial claims against government officials [will] be resolved prior to discovery." *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987). Accordingly, "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*).

*Id.*

CCAC further argues that courts have routinely dismissed claims against school officials arising out of disciplinary proceedings under the qualified immunity doctrine. *Doe v. Pennsylvania State University*, 336 F. Supp. 3d 441 (M.D. Pa. 2018); *S.G. ex rel. A.G. v. Sayreville Board of Education*, 333 F.3d 417 (3d Cir. 2003). CCAC argues that because Appellant failed to establish he had a

20

constitutional right to be free from discipline for violations of the Code, its employees are entitled to qualified immunity. Even assuming Appellant's rights were violated, CCAC argues that no reasonable college official would know that his actions amounted to a violation of Appellant's constitutional rights.

Appellant did not respond in his brief to this Court to CCAC's argument that its officials were entitled to qualified immunity, therefore, we must consider it waived. Pa. R.A.P. 2119(a); *Spotz*; *Browne*. Even if not waived, we find that CCAC employees are entitled to qualified immunity from Appellant's claims that his constitutional rights were violated as a result of CCAC's discipline proceedings. As the record reveals, CCAC provided Appellant with notice, the opportunity to be heard at his discipline hearing, a written decision with its findings which referenced the sections of the Student Handbook he violated, and a right to appeal. O.R. at 235-38. The fact that Appellant chose to remain silent during his discipline proceedings does not prohibit CCAC from disciplining him, when they provided him with procedural due process and found he violated the Student Handbook.

CCAC next argues that Appellant's claims should be dismissed because he failed to exhaust the administrative remedy at his disposal, namely, the right to file an appeal to the dean of students within three days of his expulsion letter. CCAC argues that this Court's decision in *Tran* applies here to prohibit Appellant from asserting a breach of contract claim fashioned as an appeal from his disciplinary proceeding. In *Tran*, this Court dismissed a former student's complaint that West Chester University improperly excluded her from a clinical practicum due to allegations of unsafe clinical practice, in part, because she failed to exhaust the administrative remedies provided by the university. *Tran*, 986 A.2d at 185. CCAC argues that Appellant also failed to exhaust the administrative remedies provided by

21

CCAC when he failed to file a timely appeal to the dean of students following notice of his expulsion. Appellant did not respond to this argument in his brief to the Court, so we must consider it to be waived. Pa. R.A.P. 2119(a); *Spotz*; *Browne*. Even if not waived, there is no evidence in the record that Appellant filed a timely appeal to the dean of students, and he did not aver that this administrative appeal process was inadequate to adjudicate his claim. Because he did not exhaust the administrative appeal process provided to him by CCAC, Appellant's appeal to this Court must be dismissed.

CCAC further argues that Appellant's lengthy discussion and contention that *Palmer* should govern this case is misplaced. In *Palmer*, a public school teacher brought an action against two school district administrators, in both their official and individual capacities, asserting various state law tort and constitutional claims, alleging the two administrators worked together to terminate him from his school district employment. In his complaint, the teacher averred a lengthy history of personal animosity between himself and the school administrators, which was supported by specific facts. In his complaint, the teacher also averred that the school administrators' investigation into allegations that he inappropriately touched a student was biased, and that they failed to provide him with notice of his termination. The school district and administrators filed preliminary objections to the teacher's complaint arguing they were immune from suit or that the teacher failed to plead sufficient facts to support his claims. This Court held that the administrators in their individual capacities were not immune from suit under Section 8550 of the Tort Claims Act, because the teacher pled specific facts that showed the administrators "deliberately intended to injure [teacher] by obtaining his discharge from employment regardless of the veracity of the accusations against him."

22

*Palmer*, 959 A.2d at 513. As to the Section 1983 claims, this Court held that the teacher pled sufficient facts that showed administrators in their individual capacities deprived him of his fundamental due process rights to continued public school employment. *Id.* at 514.

CCAC argues that *Palmer* does not apply to this case because, unlike the teacher in *Palmer*, Appellant failed to plead specific facts that CCAC or its employees' conduct constituted willful misconduct or actual malice under Section 8550 of the Tort Claims Act. CCAC also argues that Appellant failed to allege facts to demonstrate that its investigation was flawed or that Appellant was denied procedural due process. Appellant responds that he did plead willful misconduct to overcome immunity, and that CCAC denied him fundamental due process by conducting his discipline hearing as a "kangaroo court." After careful review, we find that although Appellant offered legal conclusions averring CCAC's willful misconduct, and opinions averring his dissatisfaction with CCAC's disciplinary process, he did not plead sufficient facts to support these contentions. Unlike the teacher in *Palmer* who had a fundamental property right in his continued public school employment, Appellant does not have a fundamental right to continued college education under *Norris*. The record here reveals that Appellant received notice and the opportunity to be heard in CCAC's discipline proceedings, even though he believed the proceedings were unfair.

## B. Claims Against the City and Officer

The City of Pittsburgh first argues that the trial court correctly dismissed Appellant's claims against the City and against Officer based on Tort Claims Act immunity. The City of Pittsburgh argues that the City is a local agency

23

under Section 8541 of the Tort Claims Act, that Appellant failed to aver the City's conduct fell within the exceptions to immunity under Section 8542 of the Tort Claims Act, and that Appellant failed to aver the City's conduct was willful or malicious under Section 8550 of the Act. Appellant included only one claim against the City in his Amended Complaint, in an unnumbered paragraph in Count 37. O.R. at 164. Appellant averred that the City "knew or should have known" that Officer's conduct was illegal, that the proceedings that followed were illegal, and that the City "failed to supervise [Officer]." *Id.* Appellant did not argue or develop this issue in his brief to this Court; therefore, we must consider it to be waived. Pa. R.A.P. 2119(a); *Spotz*; *Browne*. Even if not waived, we agree with the trial court that the City is immune from Appellant's claims under the Tort Claims Act, and that Appellant failed to plead sufficient facts to support constitutional claims against the City.

The trial court also found that "[Officer] is a police officer employed by the City and thus a municipal employee" entitled to immunity on the same basis as the City. Section 8545 of the Tort Claims Act. Trial Court 11/15/19 Opinion at 3. Appellant did not argue or develop the issue of Officer's immunity from state law claims in his brief to this Court, therefore we must consider it to be waived. Pa. R.A.P. 2119(a); *Spotz*; *Browne*. Even if not waived, we agree with the trial court that Officer is immune from Appellant's state law claims under the Tort Claims Act, because he is a City employee whose conduct does not fall into a Tort Claims Act exception. We further agree with Officer's argument that Appellant's Amended Complaint failed to aver specific facts to support that Officer acted with actual malice or willful misconduct under Section 8550 of the Tort Claims Act.

24

To the extent Officer is not immune from Appellant's state law claims, Officer argues the trial court properly dismissed them because Appellant failed to plead the facts necessary to satisfy the elements of each claim. Although we conclude the trial court correctly dismissed Appellant's state law claims against Officer on the basis of immunity under the Tort Claims Act, we will review each cause of action or purported cause of action for any legal errors. Appellant made numerous state law and constitutional claims against Officer, many of them identical to his claims against CCAC, which we will address in turn. Although his Amended Complaint included claims against Officer for conduct attributable to CCAC's discipline process, Officer is a City employee and not a CCAC employee, and there is no evidence of record that Officer participated in CCAC's discipline proceedings. Therefore, we will focus our analysis on claims that Officer injured Appellant or denied his constitutional rights for conduct connected to Appellant's arrest.

The specific conduct attributable to Officer's arrest of Appellant from the record reveals the following. On August 25, 2017, Appellant was asked to leave CCAC's administration building. When CCAC employees were unsuccessful in convincing Appellant to leave, they called for assistance from their security employees, who were also unsuccessful. CCAC security employees then called for Officer's assistance. When Officer was unsuccessful in securing answers or cooperation from Appellant, including Appellant's refusal to provide CCAC or state identification upon request, he arrested Appellant and charged him with defiant trespass and disorderly conduct. Appellant was convicted on those charges and sentenced to ten days' confinement. Appellant appealed his convictions, which were overturned on summary appeal. Officer's complaint and affidavit of probable cause included a summary of events leading to the arrest. O.R. at 46-51, 120-28.

25

Appellant's state law claims against Officer included an abuse of discretion claim, a contract claim, tortious interference with a contract, defamation, and intentional infliction of emotional distress. Officer argues that the trial court properly dismissed these claims, either because they are not recognized causes of action or that Appellant failed to aver specific facts to support the elements of these claims. Appellant argues that Officer abused his discretion when he "banished" Appellant from CCAC's campus. As we did with Appellant's claims of abuse of discretion and a contract claim against CCAC, we agree the trial court correctly dismissed these claims against Officer because they are not recognized causes of action under Pennsylvania law. As to Appellant's claims that Officer committed tortious interference with a contract, defamation, and intentional infliction of emotional distress, we agree with the trial court that Appellant failed to plead facts necessary to satisfy each element of these claims. Appellant failed to provide evidence of a contract for the tortious interference claim. Appellant failed to provide evidence that Officer's comments were published for the defamation claim. Appellant failed to provide specific facts to support that Officer's behavior was outrageous.[7]

We next turn to Appellant's claim that the trial court erred when it dismissed his claims for malicious prosecution and wrongful civil claims against Officer, stemming from his arrest. Appellant averred in his Amended Complaint that Officer arrested him because Appellant would not speak with him to explain

---

[7] Officer also argues that Appellant's claims for abuse of discretion, contract rights, tortious interference with a contract, defamation, intentional infliction of emotional distress, and invasion of privacy should be dismissed because Appellant failed to file these claims within their respective statutes of limitation. In his brief to this Court, Appellant did not address his claim that Officer invaded his privacy, therefore we consider it to be waived. Pa. R.A.P. 2119(a); *Spotz*; *Browne*. The trial court did not address Officer's statute of limitations argument in its decision, and we need not reach it here as we disposed of these claims on other grounds.

what was wrong so Officer "could help him," and because he requested a student ID card which he believed Appellant was required to produce and did not possess. O.R. at 149. Officer responds that the trial court properly dismissed Appellant's claims of malicious prosecution and wrongful civil claims against Officer because he had probable cause to arrest him. The basis of a malicious prosecution claim is for damages incurred to a plaintiff's person, property, or reputation as a proximate result of "a previous unsuccessful civil or criminal proceeding which was prosecuted *without probable cause and with malice*." *Byers v. Ward*, 84 A.2d 307, 309 (Pa. 1951) (emphasis in original). Officer does not dispute that Appellant's convictions for defiant trespass and disorderly conduct were overturned on summary appeal. However, Officer argues that success alone does not prove a lack of probable cause. *Hartman v. Moore*, 547 U.S. 250, 265-66 (2006). For the tort of malicious prosecution, probable cause is defined as "a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that a party is guilty of the offense." *Strickland v. University of Scranton*, 700 A.2d 979, 982 (Pa. Super. 1997). A showing of probable cause is an absolute defense to an action of malicious prosecution. *Id.* Officer argues that he had probable cause to arrest Appellant, based on his own observations, and as requested by CCAC employees who called for his assistance. Appellant provides an opinion that Officer lied on his affidavit of probable cause and in his criminal complaint, but Appellant fails to provide specific facts to support that opinion. Although Appellant's convictions were overturned on summary appeal, we cannot conclude the trial court erred by dismissing this claim, when Appellant failed to plead specific facts that Officer lacked probable cause to arrest him.

Officer also argues that Appellant's claim of wrongful civil claims should be waived because Appellant failed to argue that issue before this Court. If not waived, Officer argues that Appellant failed to plead any facts that Officer initiated a civil complaint against him. We agree that Appellant failed to argue in his brief to this Court that Officer instituted a civil complaint against him, and that this issue is waived. Pa. R.A.P. 2119(a); *Spotz*; *Browne*. Even if not waived, we agree that Officer did not institute a civil claim against Appellant, because Officer had no role in CCAC's disciplinary proceedings.

We next turn to Appellant's constitutional claims against Officer. Appellant averred Officer violated his Fourth Amendment right to be free from unlawful search and seizure,[8] when Officer "banished" him from CCAC's campus, and "searched and seized" Appellant's person and belongings upon his arrest. O.R. at 150. Officer responds there is no constitutional right to be free from banishment from CCAC's campus after failing to comply with CCAC's requests. Officer further responds that there is no constitutional right to be free from search when an individual is lawfully arrested, and that Pennsylvania law permits a search incident to arrest of both the person arrested and the area within his immediate control. *Commonwealth v. Simonson*, 148 A.3d 792, 799 (Pa. Super. 2016). We find the trial court did not err in dismissing Appellant's Fourth Amendment claims, because the facts pled by Appellant show that Officer conducted a valid search incident to his arrest.

Appellant next argues that Officer violated his due process rights by "initiating an administrative proceeding and issuing an administrative order

---

[8] The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated . . . ." U.S. Const. amend. IV.

28

banishing [him] from campus." Appellant's Brief at 55. Officer responds that he had no role in CCAC's disciplinary process, and, therefore, had no responsibility to provide Appellant with notice and the opportunity to respond to CCAC's charges that Appellant violated the Code. We find that Appellant failed to aver facts to support that Officer violated his due process rights with respect to CCAC's disciplinary process.

Appellant next asserts that Officer violated his rights under the First and Fifth Amendments by compelling him to answer questions about his presence on CCAC's campus, and then banished him from campus and arrested him when he refused to answer. Officer responds that although silence can constitute speech, Appellant's refusal to answer questions about his presence on campus or his status as a student are not matters of public concern protected by the First Amendment. *Commonwealth v. Stanton*, (Pa. Super., No. 2472 EDA 2012, filed March 7, 2014), slip op at ___, 2014 WL 10965736 at *10. Officer also argues that Appellant failed to show that Officer arrested Appellant in retaliation for exercising his right to silence, because he had probable cause to arrest him. "The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 139 S.Ct. 1715, 1724 (2019). Similar to the malicious prosecution claim discussed above, whether an officer had probable cause to arrest is generally reviewed under the reasonableness standard. "To ensure that officers may go about their work without undue apprehension of being sued, we generally review their conduct under objective standards of reasonableness." *Id.* at 1725. In that review, an officer's subjective intent is irrelevant, and the retaliation must be a substantial motivating factor behind the arrest. *Id.* Based on Appellant's Amended Complaint, we hold the trial court did not err when it dismissed Appellant's First

Amendment claims against Officer because he failed to plead specific facts to support the requirements.

Appellant also claims that Officer violated his Fifth Amendment right against self-incrimination because Officer spoke to him during the incident on CCAC's campus. O.R. at 151. Appellant avers he politely declined to answer Officer's questions about the criminal allegation that he was trespassing. *Id.* at 147. Officer responds that the prohibition against self-incrimination applies in a criminal trial and any other proceeding where the answers could incriminate the speaker. *Commonwealth v. Knoble*, 42 A.3d 976, 979 (Pa. 2012). Our review of the Amended Complaint reveals that Appellant failed to aver that Officer compelled Appellant to incriminate himself in a criminal trial or any proceeding. Therefore, the trial court did not err in dismissing it.

Appellant also avers that Officer violated his equal protection rights by singling him out as a "class of one for punishment for his mere presence on campus." Appellant's Brief at 42. Officer responds he acted rationally, and that Appellant failed to aver the existence of similarly situated individuals who were treated differently. *Cornell Narberth, LLC v. Borough of Narberth*, 167 A.3d 228, 243 (Pa. Cmwlth. 2017). As we did with Appellant's equal protection claim against Officer, we find that Appellant failed to address or develop this argument in his brief beyond the quoted statement, therefore, we find it has been waived. Pa. R.A.P. 2119(a); *Spotz*; *Browne*. Even if he had not waived it, we find that Appellant failed to plead the necessary facts giving rise to a class of one equal protection claim against Officer.

Officer argues that he is entitled to qualified immunity from Appellant's constitutional claims because his conduct did not violate "clearly

established statutory or constitutional rights of which a reasonable person would have known." *Pearson*, 555 U.S. at 231. Officer argues that although Appellant avers his arrest was "illegal, lacking in probable cause, and unsupported by the evidence at all," he fails to plead specific facts to support this legal conclusion. O.R. at 146. Officer argues that he had probable cause for the arrest, based on CCAC employees' reports and his own observations of Appellant's behavior. Appellant did not respond in his brief to this Court to Officer's argument that he was entitled to qualified immunity, and therefore, we must consider it to be waived. Pa. R.A.P. 2119(a); *Spotz*; *Browne*. Even if it is not waived, we find that Officer is entitled to qualified immunity from Appellant's claims that his constitutional rights were violated as a result of his arrest. As the record reveals, Officer's arrest of Appellant was based on probable cause based on Appellant's refusal to leave CCAC property after repeated attempts to talk with him were unsuccessful.

We next turn to Appellant's argument that the trial court erred when it granted Officer's Petition to Strike the default judgment entered for Officer's failure to timely respond to the Amended Complaint. Appellant argues that he achieved proper service on Officer at his place of employment. Officer responds that Appellant's service was defective. We need not resolve the service issue to dispose of Appellant's claim. The trial court docket reveals that Appellant entered a praecipe for default judgment against Officer on May 9, 2019. Officer filed the Petition to Strike on May 14, 2019. O.R. at 294-302. Officer's filing was within the 10-day period required by Pa. R.C.P. No. 237.3(b)(2), which states: "If the petition is filed within ten days after the entry of a default judgment on the docket, the court shall open the judgment if one or more of the proposed preliminary objections has merit or the proposed answer states a meritorious defense." The trial court found that one

31

or more of Officer's preliminary objections had merit, as evidenced by the trial court's order sustaining them. Therefore, we cannot find the trial court erred in granting Officer's Petition to Strike under the applicable rule.

We now turn to Appellant's argument that he is entitled to attorney's fees from CCAC and the City of Pittsburgh, although he is representing himself in this matter. In his brief to this Court, Appellant argues that an award of attorney's fees may be appropriate for "*pro se* litigants who sought advice from outside counsel," citing *Blazy v. Tenet*, 194 F.3d 90, 92 (D.C. Cir. 1999). The City responds that it is "well[-]settled that a *pro se* litigant cannot recover attorney's fees for the work expended in litigating his or her own case." *Kanofsky v. Tax Review Board*, (Pa. Cmwlth., No. 2740 C.D. 2015, filed January 5, 2017), slip op. at 4.[9] We find that Appellant provided no applicable legal authority to support his claim for attorney's fees in this matter.

### III. Conclusion

For the foregoing reasons, based upon careful review, the trial court's orders of August 30, 2019 are affirmed.

---

[9] *See* Pa. R.A.P. 126(b) ("As used in this rule, "non-precedential decision" refers to . . . an unreported memorandum opinion of the Commonwealth Court filed after January 15, 2008. [] Non-precedential decisions . . . may be cited for their persuasive value.").

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ross James,                              :
                                         :
                        Appellant        :
                                         :
            v.                           :  No. 1303 C.D. 2019
                                         :
Community College of Allegheny          :
County, Bridgett Golman, Jane           :
Greenwood, Sumana Misra-Zets,           :
Don Breitbarth, Lawrence Doperak,       :
Michelle Tedder, Jeffrey Labella and    :
City of Pittsburgh                      :

**PER CURIAM**

# **O R D E R**


        AND NOW, this 20<u>th</u> day of <u>August</u>, 2021, the orders of the Allegheny

County Court of Common Pleas dated August 30, 2019, are AFFIRMED.